UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ALEJANDRO AGUILERA QUIROZ,<br><br>                     Petitioners,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden Otay Mesa Detention Center, et al.,<br><br>                     Respondents. | Case No.: 26-CV-866 JLS (DEB)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 5) |

Presently before the Court is Petitioner Jose Alejandro Aguilera Quiroz's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 5). Also before the Court is Respondents' Return to Habeas Petition ("Ret.," ECF No. 8) and Petitioner's Traverse ("Traverse," ECF No. 9). For the reasons set forth below, the Court **GRANTS** Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 5).

## BACKGROUND

Petitioner is a native and citizen of Honduras, who entered the United States through the CBP One app on November 14, 2022. Pet. at 2. Petitioner was taken into custody then released into the United States where he moved to Virginia, applied for asylum, and attended all check-in appointments. *Id.* This parole "automatically expired on November 14, 2023." Ret. at 2. On August 3, 2025, Petitioner was arrested for a DUI where he spent

two days in jail before being taken into ICE custody. Pet. at 2–3. Petitioner was never convicted of the DUI, given notice of the decision to take him into immigration custody, or given any sort of interview to contest his detention. *Id.* On November 26, 2025, Petitioner was ordered removed. *Id.* Petitioner appealed this decision and the appeal remains pending. *Id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention— federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Petitioner argues that the summary revocation of his parole without justification or consideration of his individualized circumstances violates the Due Process Clause. Pet. at 4–5. The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292,

26-CV-866 JLS (DEB)

306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 792 F. Supp. 3d at 1032 (citing *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Respondents contend that Petitioner is detained under 8 U.S.C. § 1226(a) and is only entitled to a bond hearing—making his other constitutional claims moot. Ret. at 3. The Court disagrees. Petitioner has been granted humanitarian parole, granting him parole for a year.[1] Pet. at 2. Petitioner is not a newly arrived noncitizen seeking admission at the border, as Petitioner has been in the United States since November 2022. Pet. at 2. Upon

---

[1] Respondents contend that because Petitioner's parole expired after a year, any due process arguments are foreclosed. Ret. at 3. The Court disagrees because Petitioner's liberty "interest did not expire along with Petitioner's parole agreement." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). "Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detention is warranted." *Id.* (citing *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)). Therefore, the expiration of Petitioner's parole does not impact the liberty interest in his release. *See, e.g.*, *Omer G. G. v. Kaiser*, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) (finding the expiration of petitioner's parole did not extinguish his liberty interest); *Quiroga-Chaparro v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-1731 AC, 2025 WL 3771473, at *4 (E.D. Cal. Dec. 31, 2025) (same); *Kazybayeva v. Warden of Otay Mesa Det. Ctr.*, No. 26-CV-0421-GPC-MMP, 2026 WL 280478, at *3 (S.D. Cal. Feb. 3, 2026) (same).

arrival, he was determined to not be a danger to the community or a flight risk and has attended his check-in appointments. *Id.* The relief Petitioner is entitled to is not limited to a bond hearing; Petitioner has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1128 (E.D. Cal. 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Matthews*, 424 U.S. at 335. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533

U.S. at 690.  Petitioner has an interest in remaining with and providing for his family and continuing the asylum process.  *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard.  Pet. at 6.  Since DHS's initial determination that Petitioner should be paroled because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.").  "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings.  Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ." *Saravia*, 280 F. Supp. 3d at 1760.  Respondents, failing to address Petitioner's Due Process argument in their response, do not point to any material circumstances that have changed that would warrant reconsideration of his parole.[2]  *See generally* Ret.  "Where as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any

---

[2] Respondents fail to provide any legal authority "in support of the proposition that [P]etitioner's DUI arrest justifies re-detaining him without prior notice or a pre-detention hearing." *Vargas Monsalve v. Chestnut*, 26-CV-626-DAD-CKD, 2026 WL 242066, at *2 (E.D. Cal. Jan. 29, 2026).  "[T]he record is silent as to whether [P]etitioner was even charged after his arrest," but "it is undisputed that he was not convicted." *Rodriguez Cruz v. Warden of the Golden State Annex*, No. 26-CV-348 DAD SCR, 2026 WL 453561, at *2 (E.D. Cal. Feb. 18, 2026).  Further, it is undisputed that Petitioner did not receive prior notice or a hearing before his re-detention. *See id.*; Pet. at 4–5.  Therefore, the Court follows others in the Ninth Circuit in concluding that "re-detaining an individual for a pending DUI charge without prior notice or a hearing violates due process." *Marquez v. Chestnut*, 26-CV-988-DAD-CSK, 2026 WL 326811, at *1 (E.D. Cal. Feb. 6, 2026).

26-CV-866 JLS (DEB)

valid basis for [his] detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 792 F. Supp. 3d at 1036; *Matute*, 807 F. Supp. 3d at 1130; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Ret.

Therefore, because Respondents detained Petitioner by revoking his parole in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Alegria Palma v. Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. 14 (S.D. Cal. Aug. 11, 2025) (granting a TRO based on a procedural due process challenge to a revocation of parole without a pre-deprivation hearing); *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025) (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 5). The Court **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting parole. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before a neutral decision maker to determine whether detention is warranted. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the

community or a risk of flight.[3]  The Parties are **ORDERED** to file a Joint Status Report by March 16, 2026, confirming that Petitioner has been released.  The Clerk of Court **SHALL** close the file.

       **IT IS SO ORDERED.**

Dated:  March 10, 2026

Hon. Janis L. Sammartino
United States District Judge

---

[3] This relief has been granted in similar matters.  *See, e.g.*, *Matute*, 807 F. Supp. 3d at 1133; *Pinchi*, 792 F. Supp. 3d at 1038; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).

26-CV-866 JLS (DEB)